**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER MUSSO, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FMR LLC, FIDELITY GLOBAL BROKERAGE GROUP, INC., and FIDELITY BROKERAGE SERVICES LLC,<br><br>Defendants. | Civil Action No.<br><br><u>CLASS ACTION</u><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Christopher Musso ("Plaintiff"), individually on behalf himself of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of publicly available information concerning Defendants FMR LLC ("Fidelity Investments"), Fidelity Global Brokerage Group, Inc. ("FGB"), and Fidelity Brokerage Services LLC ("FBS") (collectively, "Fidelity" or the "Company"), including press releases, and media reports and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**I.     NATURE OF THE ACTION**

1.     This action alleges claims against Fidelity for gross negligence, negligent misrepresentation and violations of New Jersey law and similar state laws on behalf of a proposed class consisting of all persons and entities who placed or attempted to place orders for

securities transactions using Fidelity's Active Trader Pro platform on February 6, 2018 from 6:30 a.m. to 10:25 a.m. (EDT) (the "Class Period") whose trades were not executed by Fidelity at the time the order was placed or attempted to have been placed, and who was damaged by the delay (the "Class").

2. Fidelity is an investment management company that serves individual investors, employers, and advisors and institutions. Fidelity offers trading accounts and platforms, planning and advice, and investment products and research.

3. As of June 30, 2017, Fidelity reported 26 million individual investors and 24.9 million brokerage accounts, with $6.2 trillion in total customer assets. Fidelity had the largest market share by client assets among discount and online brokerage firms tracked by consulting firm Aite Group. It controlled 41% of the market at the end of 2016.

4. Fidelity markets itself to traders as offering access to its "exclusive suite of sophisticated tools, services, and resources to help you unlock your full trading potential. You'll also get access to our cutting-edge desktop trading platforms."

5. Fidelity offers "cutting edge tools" for "active" traders like its Active Trader Pro platform. Active Trader Pro is, unless otherwise agreed to by Fidelity, only available to "active traders" with a Fidelity account who trade 36 times or more in a rolling 12-month period.

6. Active Trader Pro is marketed to active traders who want to "[t]rade like a Wall Street pro right from your desktop." Fidelity represents that Active Trader Pro will allow its customers to "find and execute opportunities quicker", to enter orders "fast" and "quick", to access "real-time" data, and to trade equities during extended hours.

7. As alleged below, while Fidelity represented to its customers that its Active Trader Pro platform offers "quick" and "fast" order entries, in truth, Active Trader Pro regularly

suffers outages and service interruptions because of materially defective technology.

8. For active traders, outages are serious and costly problem. An inability to trade quickly can cost traders money, especially in volatile markets.

9. Such volatility occurred on February 5, 2018. The S&P 500 declined 4.1 percent, its worst day in more than six years, following a 2.1 percent decline on Friday, February 2, 2018. The Dow Jones industrial average declined as much as 1,500 points, and closed down 1,175 points, after falling nearly 666 points February 2, 2018.

10. Considering the volatility on February 5, 2018, it was important for Plaintiff and members of the Class to have access to Fidelity's Active Trader Pro platform in order to monitor their respective investments and be able to execute fast and quick trades.

11. On February 6, 2018, in contradiction of Fidelity's representations that Active Trader Pro users would be able to execute "fast" and "quick" transactions and have access to streaming "real-time" market data, Active Trader Pro users who attempted to log into their accounts were denied access, or were able to log in, but were unable to execute trades. Defendants' wrongful conduct left Plaintiff and members of the Class flying blind, as they were unable to know whether their transactions were executed or the real-time status of their investments.

12. Various sources began to report that Fidelity's website was unavailable and received the following message when visiting Fidelity's website:



13. At 7:04 a.m. Fidelity disclosed on Twitter that some customers were experiencing issues with Fidelity's website:



14. At 8:19 a.m. Fidelity reported on Twitter that some clients were experiencing "issues with our website":



15. At 10:25 a.m., *Reuters* reported that Fidelity said that "problems with its website had been resolved after it was hit with 'intermittent technical difficulties' as clients nervously watched a stock market rout reverberating around the globe. Fidelity spokesman Michael Aalto confirmed by email that the firm's website problems earlier in the day had been fixed. He did not respond to requests to elaborate on the issues."

16. At 10:31 a.m., *CNBC News* published a story titled "Broker website including Fidelity report outages during wild trading in US markets" that reported, in part, the following:

> Major U.S. brokerage firms reported outages or slowly running customer websites on Tuesday during another day of volatile trading as the U.S. stock markets reversed a sharp downturn. A Fidelity spokesman said late Tuesday morning that the firm, with $2.2 trillion under management, resolved intermittent technical issues on its website. A message on its website earlier in the morning said, "Our

homepage is temporarily unavailable but don't worry, we're working quickly to fix this problem."

17. The outage on the morning of February 6, 2018 resulted from material defects in Fidelity's technology and systems that had caused similar outages in the past. The inability of Active Trader Pro platform users to access their accounts or execute trades for several hours was the result Defendants' wrongful conduct and caused damage to Plaintiff and members of the Class.

## II.     JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than the Defendants. *See* 28 U.S.C. § 1332(d)(2)(A). On information and belief, no more than one-third of the members of the proposed class are citizens of the State of New Jersey.

8. This Court has personal jurisdiction over Defendants because Defendants are authorized to do business and do conduct business in New Jersey, have marketed, advertised, and sold their services in New Jersey, and have sufficient minimum contacts with New Jersey and Defendants sufficiently avail themselves of the markets of New Jersey through its promotion, sales, and marketing within New Jersey to render the exercise of jurisdiction by this Court permissible. According to Fidelity's website, the Company operates 9 branch locations in New Jersey. Fidelity's website (www.fidelity.com) is registered to Defendant Fidelity Investments and is accessible in New Jersey.

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendants do business in this District, have intentionally availed themselves of the laws and markets within this

District through the promotion, marketing, distribution and sale of their services in this District, and a significant portion of the facts and circumstances giving rise to Plaintiff's Complaint occurred in or emanated from this District.

### III. PARTIES

10. Plaintiff is a resident of the State of New Jersey and is a Fidelity customer who was eligible to use and did use the Company's Active Trader Pro platform, and has been damaged by the conduct alleged herein. Plaintiff was unable to execute trades on Fidelity's Active Trader Pro platform at the time the orders were placed during the Class Period and was damaged.

11. Defendant Fidelity Investments is privately-owned Delaware limited liability company with a principal place of business at 245 Summer Street, Boston, Massachusetts. Fidelity Investments is registered with the State of New Jersey. Fidelity Investments' registered agent is Frank Guido, 36 Sunset Terrace, Bayonne, NJ 07002.

12. Defendant FGB is Massachusetts corporation with a principal place of business at 245 Summer Street, in Boston, Massachusetts. FGB is a wholly owned subsidiary of Defendant Fidelity Investments. FGB is registered with the State of New Jersey as a foreign corporation and has a registered office at 820 Bear Tavern Road, West Trenton, New Jersey 08628.

13. Defendant FBS is Delaware limited liability company and is a wholly owned subsidiary of Defendant FGB. FGB is the sole member of FBS. FBS offers retail brokerage accounts and trading products and services to investors. FBS is headquartered at 900 Salem Street, Smithfield, RI 02917. FBS is registered with the State of New Jersey as a foreign limited liability company and has a registered office 820 Bear Tavern Road, West Trenton, New Jersey 08628.

**IV.   FACTS AND BASIS FOR LIABILITY**

**A.  Fidelity's Active Trader Pro Platform**

14.     Fidelity's Active Trader Pro platform purports to be a state-of-the-art customizable trading platform for Fidelity's customer's desktop, "optimized for today's technology."

15.     Active Trader Pro purports to be "[f]ully customizable with **real-time** streaming account, order, and market data updates" and provides "exclusive" tools like "**Real-time** Analytics" that use historical trends to "help you make more informed trading decisions." (Emphasis added).

16.     According to Fidelity's website, Active Trader Pro provides the following features for "active" traders:

   i.

   ii.   Integrated Time and Sales Tool **with real-time** and historical data for equities and options;

   iii.  Option Trade Builder to "build" your option trades in 3 steps. Pick your outlook, strategy, expiration, and strike price "to **quickly** build a trade";

   iv.   Create and save up to 50 equity or option orders simultaneously. **Place up to 20 orders at once** with the multi-trade ticket;

   v.    **Real-time** integrated balances, history, and positions with **real-time** tax lot detail;

   vi.   **Fast order** entry by clicking the bid or ask to prefill trade ticket; and

   vii.  Advanced order status with **quick** cancel-and-replace interaction.

(Emphasis added).

17. Active Trader Pro's "Direct Ticket" trade feature purportedly "offers a view into quotes and liquidity across various exchanges and also supports extended hours and across-session trading for equities" and offers settings for "directed trading to enable advanced equity order types, such as reserve orders, or to create shortcut buttons **for rapid order entry**." (Emphasis added).

18. Fidelity has advertised its Active Trader Pro platform nationwide and in New Jersey through television commercials and on social media sites, like Twitter, YouTube and Facebook.

19. One commercial from 2016 that aired on ESPN's SportsCenter represented that "Fidelity's Active Trader Pro helps you know when to get in and out of trades."

20. Another Fidelity advertisement on Twitter that was disseminated just minutes (5:08 a.m.) before the beginning of the Class Period represented that its Active Trader Pro platform offered "Real-time streaming, account order and market updates", as follows:



B. **Fidelity's History of Service Interruptions**

21. Fidelity has a history of service interruptions because of its materially defective technology.

22. On March 17, 2014, *Fox Business* reported that online trades at Fidelity Investments were delayed or duplicated during a 30-minute period due to technical difficulties.

23. Fidelity said it experienced "technical difficulties routing orders to the market." Fidelity reportedly said some online traders were "delayed or duplicated" at 9:45 a.m. ET for about 30 minutes. A Fidelity Investment spokesperson reportedly stated that "[w]e took prompt steps to resolve it. Currently we are working with customers to address those trades affected" and "[i]f a customer lost money due to this, we will make them whole." No such offer has been made by Fidelity concerning the February 6, 2018 outage.

24. In June and July 2017, Fidelity's Active Trader Pro users, including Plaintiff, reported that Fidelity's Active Trader Pro was "temporarily unavailable" due to a "technical error":



25. On November 29, 2017, the *Wall Street Journal* reported that yet another "technical error at Fidelity Investments . . . blocked millions of customers from their online brokerage accounts, resulting in untold losses due to missed trades." The article explained:

> For more than two hours, attempts to log in were met with an error message telling users that access to their accounts was "temporarily unavailable." Around noon, an alert atop the website said that the issue had been resolved and urged investors to "please try again."
>
> A spokesperson said that the outage was the result of an "internal tech issue" affecting all users of the firm's website and mobile app. Both were fully operational by Wednesday afternoon.

26. Also on November 29, 2017, according to *Investment News* "Fidelity spokesperson Mike Aalto told CNBC, 'our site's down, but I can tell you it's an internal issue. Clients aren't able to log in to their accounts right now.' He said clients could access the mobile version of Fidelity's site, and that the disruption was not the result of malicious activity or a hack." Fidelity said that an "internal glitch" caused the outage, which was first spotted around 9:30 a.m., when U.S. stock trading commences. Customers were prevented from logging into their online accounts until around 12:00 p.m. E.T.

27. On or around November 29, 2017, on Twitter Fidelity represented that an "internal tech issue has been resolved."

28. On December 2, 2017, the *Wall Street Journal* published an article titled "Fidelity Offers Reparations to Customers After Web Outage." The article stated, in part, that:

> Fidelity Investments has offered reparations to some clients after a website outage that lasted more than two hours on Wednesday blocked millions of customers from accessing their online accounts.
>
> The Boston-based firm's offers to clients have included waiving commissions on some trades attempted during the outage and offering several free trades. Fidelity has also offered to review and potentially adjust the pricing on some trades.
>
> "Customer service is a top priority at Fidelity. We will review each situation on a case by case basis," a company spokesman said in an email.
>
> Fidelity attributed the outage Wednesday to a "technical error" that was later resolved.
>
> "That's a big deal - it was a couple of hours during market hours," with little other client communication, said Mark Winkler, a Fidelity customer who runs Omaha, Neb.-based server parts company Global One Technology. The error message that appeared online was "vague and unhelpful", he said. . .
>
> Fidelity gave Mr. Winkler 10 free trades when he contacted the company Thursday, he said. . .
>
> Vik Patel, chief operating officer at a data center in Michigan, who invests primarily in technology companies, struggled to log in Wednesday morning as technology stocks declined.

It was "a bad day not to be able to trade," he said.

When he called customer service on Wednesday, a representative offered to execute trades for him over the phone, but Mr. Patel, 32, could not see his full holdings. "I absolutely would have made some trades when stocks were going down in the tech sector," he said.

In Shaker Heights, Ohio, Gregory Harmon tried to log in Wednesday morning around 10 a.m. to check on accounts for himself and his wife.

"We were seeing this major shift out of technology stocks. I was planning to look and see if I needed to buy and sell," said Mr. Harmon, who is president of Dragonfly Capital, a firm that manages money for high net worth individuals. He did not seek compensation from Fidelity after the outage.

29. On December 4, 2017, less than a week later, access to Fidelity's website was yet again interrupted. *Reuters* reported that Fidelity stated that "some of its clients could not access their accounts on the company's website, the second time in a week that the large online brokerage operator experienced technical issues. 'We have learned that some clients are experiencing issues with the website,' Fidelity said in a service alert. 'We are looking into this problem and will provide updates shortly.'"

30. On or around December 4, 2017, on Twitter Fidelity represented that the technical issues with its website were resolved.

31. The repeated interruptions of service demonstrated Fidelity's Active Trader trading platform suffered from material technological defects and was not suitable for active traders as represented by Defendants.

32. Because of the dissemination of news reports and through customer complaints, as well as Defendants' admissions of "internal" technological "glitches", Defendants had reason to know of these material technological defects, they failed to correct them and were on notice that these material defects could adversely affect Active Trader Pro platform users, especially in periods of high volatility.

11

### C. Fidelity's Service Interruptions on the Morning of February 6, 2018.

33. On February 5, 2018, both the S&P 500 and Dow Jones industrial average significantly declined. According to *CNBC News*, there was no specific driver behind the market's decline.

34. According to CNBC News, Fidelity stated on February 5, 2018 "that its customers remained calm during the market plunge and many took the opportunity to buy" and that the "company's website appeared not to have issues." "From a retail perspective, definitely more buyers than sellers today," Keith Bernhardt, vice president of retirement and college products at Fidelity, said in a phone interview with CNBC. "We're not really seeing panic."

35. On February 6, 2018, before the market opened, various sources began to report that Fidelity's website was unavailable.

36. At 7:04 a.m. and 8:19 a.m. Fidelity reported on Twitter that some clients were experiencing "issues with our website".

37. CNBC News reported that Fidelity's website was reporting outages because of volatile trading.

38. A Fidelity spokesperson said late in the morning on February 6, 2018 that it "resolved intermittent technical issues on its website."

39. By the time Fidelity restored access to the Active Trader Pro platform on or around 10:30 a.m., the damage was done to customers who were denied access or whose trades were not executed at the time they were made.

### V. CLASS ALLEGATIONS

40. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class, defined above. Excluded from the Class are Defendants and their families, the officers, directors and affiliates of the Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41. The members of the Class are so numerous that joinder of all members is impracticable. As of June 30, 2017, Fidelity reported 24.9 million brokerage accounts. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.

42. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

43. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: (i) whether Fidelity was grossly and recklessly negligent, made grossly and recklessly negligent misrepresentations, and recklessly violated New Jersey consumer protection laws and similar statutes in effect in other states; and (ii) to what extent the members of the Class have sustained damages and the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
## (GROSS AND RECKLESS NEGLIENCE AGAINST ALL DEFENDANTS)

46. Plaintiff repeats and re-alleges every allegation set forth above as if fully set forth, expect for allegations relating to material misstates or omissions.

47. Fidelity owed its customers, Plaintiff and members of the Class, the duty of reasonable care.

48. Fidelity's conduct was palpably unreasonable and rises to the level of gross and reckless negligence because Fidelity acted with reckless indifference to the rights of Plaintiff and member of the Class. Fidelity's conduct was so careless as to show complete disregard for the rights of Plaintiff and the member of the Class.

49. Further, Fidelity's extensive history of service interruptions and its failure to take reasonable measures to avoid such interruptions in the future, knowing that its clients trading on its Active Trader Pro platform could suffer significant damages due to such service interruptions, constitutes willful misconduct. Fidelity failed to act knowing that its conduct would result in damage. Fidelity failed to act under these circumstances where it was clearly required, indicating reckless disregard of its inaction.

50. Fidelity's reckless disregard of a known and obvious risk – that its technology was materially defective and not suitable for "active traders" – was so great as to make it highly probable that harm would result.

51. Because Fidelity breached its legal duties, Plaintiff and the Class suffered damages.

52. The damages suffered by Plaintiff and the Class were all general and special

damages arising from the natural and foreseeable consequences of Fidelity's conduct.

53. New Jersey law or similar statutes in effect in other states applies to the class alleged herein.

## COUNT II
## (NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS)

54. Plaintiff repeats and re-alleges every allegation set forth above as if fully set forth.

55. Fidelity had a duty to Plaintiff and members of the Class because of their customer relationships with Fidelity.

56. Fidelity recklessly made false representations about its Active Trader Pro platform that it should have known were incorrect because of its history of repeated service interruptions and materially defective technology.

57. Defendants falsely represented that the Active Pro Trader platform provided "Streaming", "Integrated Time and Sales Tool with real-time and historical data for equities and options" "quick trades", "Real-time integrated balances, history, and positions with real-time tax lot detail", "Fast" orders, "advanced order status with quick cancel-and-replace interaction", and "rapid order entry."

58. The information provided in Fidelity's representations was known by the Defendants to be desired by the Plaintiff and members of the Class and necessary for active trading.

59. Plaintiff and the members of the Class reasonably relied on Fidelity's representations to their respective detriment.

60. New Jersey law or similar statutes in effect in other states applies to the class alleged herein.

## COUNT III

### (VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT AGAINST ALL DEFENDANTS)

61. Plaintiff repeats and re-alleges every allegation set forth above as if fully set forth.

62. Fidelity recklessly misrepresented that the Active Pro Trader platform provided "Streaming", "Integrated Time and Sales Tool with real-time and historical data for equities and options" "quick trades", "Real-time integrated balances, history, and positions with real-time tax lot detail", "Fast" orders, "advanced order status with quick cancel-and-replace interaction", and "rapid order entry."

63. Defendants conduct constitutes an unconscionable commercial practice, deception, fraud, false promise and/or misrepresentation as to the nature of the goods, in violation of the New Jersey Consumer Fraud Act.

64. Plaintiff and members of the Class suffered an ascertainable loss caused by Defendants' misrepresentations because they would not have used Active Trader Pro on the same terms if the true facts concerning had been known.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

B. Awarding compensatory damages in favor of the Plaintiff and the other Class members against all Defendants, jointly and severally, for all direct damages sustained because of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      D.      Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: February 14, 2018

                                      By: _____
                                      Seth R. Lesser
                                      Jeffrey A. Klafter*
                                      KLAFTER, OLSEN & LESSER, LLP
                                      Two International Drive, Suite 350
                                      Rye Brook, NY 10573
                                      Tel: (914) 934-9200
                                      Fax: (914) 934-9220
                                      Seth@klafterolsen.com
                                      JAK@klafterolsen.com

                                      Robert N. Kaplan*
                                      Jeffrey P. Campisi*
                                      KAPLAN FOX & KILSHEIMER LLP
                                      850 Third Avenue; 14th Floor
                                      NY, NY 10022
                                      Tel: (212) 687-1980
                                      Fax: (212) 687-7714
                                      rkaplan@kaplanfox.com
                                      jcampisi@kaplanfox.com

                                      *Counsel for Plaintiff and the Proposed Class*

\* To be admitted Pro Hac Vice